IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WANDA SUMMEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:16CV1185 |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Wanda Summey ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on September 25, 2012, alleging a disability onset date

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of March 1, 2011 in both applications. (Tr. at 17, 156-63.)[2] Her applications were denied initially (Tr. at 77-96, 121-29) and upon reconsideration (Tr. at 97-120, 132-40). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 142.) Plaintiff, along with her non-attorney representative, attended the subsequent hearing on November 12, 2014. (Tr. at 17.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through March 13, 2015, the date of his decision. (Tr. at 25.) On July 29, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> chronic gastrointestinal dysfunction, including inflammatory bowel disease, diverticulosis and chronic diarrhea, and obesity.

(Tr. at 20.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work "except that she must have access to bathroom facilities on an

---

[the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

'as needed' basis." (Tr. at 21-22.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could return to her past relevant work ("PRW") as an office manager. In particular, he noted that "since [Plaintiff] worked in an office setting, she would have access to bathroom facilities, as needed." (Tr. at 24.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 24-25.)

Plaintiff now argues that "[t]he ALJ erred by failing to make a finding regarding the frequency and duration of Plaintiff's bathroom usage due to her GI impairments and by failing to consult a [vocational expert] regarding the effect such usage would have on her ability to perform her PRW as an office manager." (Pl.'s Br. [Doc. #11] at 4.) Defendant counters that no further clarification is needed. Specifically, she argues that Plaintiff, who bears the burden of proof at step four, has not shown an inability to return to her past work as an office manager. Defendant further notes that Plaintiff's medical records showed improvement in her GI symptoms with medication. (Def.'s Br. [Doc. #13] at 6-7.) In short, Defendant contends that Plaintiff simply failed to demonstrate the need for any more specific limitations as to her bathroom usage.

However, other courts in this circuit have concluded that where, as here, "an ALJ finds that a claimant has an impairment that requires him to have access to a bathroom, the ALJ should make specific findings concerning the frequency and duration of Plaintiff's bathroom usage." Binder v. Colvin, No. 5:12-CV-271-D, 2013 WL 1686306, at *3 (E.D.N.C. Mar. 21, 2013); see also Taylor v. Astrue, No. 7:11-CV-162-FL, 2012 WL 3637254, *11 (E.D.N.C. August 1, 2012); Davis v. Comm'r. of Soc. Sec., No. 2:10-CV-30, 2011 WL 442118, *1 (N.D.W.Va. February 2, 2011). In the present case, Plaintiff testified that, because of her GI

6

impairments, which the ALJ acknowledged as severe, she "ha[s] to be close to a bathroom numerous times a day." (Tr. at 34, 22.) She further testified that she "can't ride or drive for long periods" because she "ha[s] to make sure [she] know[s] where there is a bathroom." (Tr. at 38.) Even during the day at home, Plaintiff's attorney characterized her as taking "very many trips to the bathroom" (Tr. at 36), and her medical records reflect that even when her condition was stable, she still reported "5-6 bowel movements each morning." (Tr. at 519.) Nevertheless, the ALJ made no findings regarding the extent to which Plaintiff required unscheduled bathroom breaks, and there is thus no way to determine the extent to which the frequency and length of such breaks could potentially impact her ability to perform her job.

In addition to failing to make specific findings regarding the frequency and duration of Plaintiff's need for bathroom breaks, the ALJ also failed to provide any basis for determining the impact of those limitations on Plaintiff's ability to perform her past job. Defendant argues that the ALJ was not required to obtain vocational expert testimony to clarify this matter, as "there is no requirement that vocational expert testimony be used at step four (i.e., determining whether a claimant's RFC allows her to perform her past relevant work)." (Def.'s Br. at 7 n.2) (citing Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process, 68 Fed. Reg. 51153, 51160 (Aug. 26, 2003) (response to public comments) ("VE testimony is not required at step 4, but VE evidence may be obtained at step 4 to help us determine whether or not an individual can do his or her past relevant work")). Defendant is correct that the failure to obtain vocational expert testimony at step four is not error *per se*. However, substantial evidence must support the ALJ's determination, and in the present case, the ALJ fails to cite any basis for his conclusion that Plaintiff's need for unrestricted bathroom

7

breaks would not impact Plaintiff's ability to perform her past work. As another court found in similar circumstances, "[n]othing in the record or the DOT indicates that an individual is able to perform [her PRW] no matter how frequently and for how long she needs bathroom breaks. In fact, nothing in the record or DOT provides any information about employer tolerance for breaks of any kind. . . ." Green v. Astrue, No. 3:09-CV-331, 2010 WL 2901765, at *7 (E.D. Tenn. July 2, 2010). Here, as in Green, "[t]he ALJ did not explain his reasoning at all, and he pointed to no evidence that [office managers] are free to use the restroom 'as needed,'" regardless of frequency or duration. Id.; see also Davis v. Astrue, 2011 WL 399956, at *37 (N.D.W.Va. Jan. 11, 2011). Instead, the ALJ simply surmised that "since [Plaintiff] worked in an office setting, she would have access to bathroom facilities, as needed." (Tr. at 24.) There is no indication as to how the ALJ made this determination. Plaintiff had not worked at the "office manager" position in over 14 years, since 2000, and nothing in the record indicates that she was given unrestricted breaks. (Tr. at 171-76, 183, 189.) For her part, Plaintiff testified that she could no longer work full time because of her diverticulitis and her need to be "close to a bathroom numerous times a day." (Tr. at 34.) Moreover, although her past position was labeled as an "officer manager," the position was also discussed during the hearing before the ALJ as a "receptionist" at a medical practice. (Tr. at 33.) In her application for benefits, Plaintiff noted that in that position, she was responsible for, inter alia, checking patients in and out for their medical appointments. (Tr. at 193, 205.) Thus, although Plaintiff was in an office setting, it is not clear that an individual tasked with responsibilities as a receptionist at a medical practice, including checking patients in and out, would have the ability to leave the front desk at will for unrestricted bathroom breaks. The record contains no

vocational expert testimony or other evidence on which the ALJ relies to support this determination. Accordingly, substantial evidence fails to support the ALJ's conclusion that an office setting alone would adequately account for Plaintiff's GI-related limitations that were reflected in the RFC.[5]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 5th day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[5] To the extent that the Commissioner now contends that the evidence does not support the need for bathroom visits so frequent as to affect Plaintiff's job performance, (Def.'s Br. at 6), the ALJ did not rely on such reasons at step four or in assessing the RFC. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must articulate some legitimate reason for his decision."); Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) ( "[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche, 715 F.2d at 150), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))).